UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VALLEY HOUSING, LP, ET AL. | : | |
| Plaintiffs, | | |
| v. | : | 3:06 CV 01319 (TLM) |
| | | |
| CITY OF DERBY, ET AL. | : | |
| Defendants. | : | August 11, 2011 |

### AFFIDAVIT OF DAVID N. ROSEN

Under penalty of perjury, David N. Rosen deposes and says:

1.      I am co-counsel for the plaintiffs. I make this affidavit in support of plaintiffs'

application for attorney's fees.

2.      My experience is in summary as follows.

**Education:** I received a B.A. degree *magna cum laude* from Harvard College in

1965. In college I received academic honors including election to Phi Beta Kappa, an honorary

Harvard College Scholarship, an honorary John Harvard Scholarship, and the Detur Prize. I

studied for one year at the London School of Economics as an Honorary Woodrow Wilson

Fellow, then attended Yale Law School, from which I graduated in 1969.  In law school I was a

member of the Board of Editors of the Yale Law Journal.

**Employment:** During law school, my summer employment consisted of teaching at an

all-black high school in South Carolina after my first year and working at the ACLU as a Law

Students Civil Rights Research Council Fellow after my second year. After graduation I worked

in 1969-70 at New Haven Legal Assistance Association as a Reginald Heber Smith Community

Lawyer Fellow.  I then began my own private practice, which has continued to the present.  For

32 years I was in partnership with Edward J. Dolan as Rosen & Dolan, P.C.  When Mr. Dolan

1

was appointed to the bench in 2004, I continued my practice under its current name, David Rosen & Associates, PC. Additionally, since 1982 I have been on the faculty of the Yale Medical School as a Lecturer in the Department of Child Psychiatry at the Child Study Center. Since 1999 I have been on the faculty of Yale Law School as a Senior Research Scholar.  Since 2008 I have held a third faculty appointment at Yale, as a Visiting Lecturer at Yale Law School, teaching in the Educational Adequacy Clinic.

      3.     I have received various kinds of public recognition during my career. I have been listed in *Best Lawyers in America*, a peer-reviewed publication, for over 20 years.  I am listed in the categories of Appellate Law, Business Litigation, Labor and Employment Law, and Personal Injury Law, apparently the only lawyer in the United States to be listed in all four categories. I have also recently been identified as that publication's first Appellate Lawyer of the year for New Haven, a determination reportedly based solely on peer reviews. I have also been elected a member of the American Board of Trial Advocacy and a Fellow of the Connecticut Bar Foundation.  In 2008 I received this Court's Pro Bono Award for service in connection with the Thomas Emerson Fellowship program our firm has established for new lawyers with an interest in doing public interest work in the context of a private law firm. (This Fellowship grew out of the long relationship my firm and I have had with Yale Law School, which has given us the opportunity to have many Yale law students work in our office during the school year as well as summers before going on to distinguished careers of their own.) In addition, I am on the pro bono panels of both this Court and the Second Circuit and the CJA panel of this Court and devote substantial time to pro bono cases in both courts.

      I have also been appointed by this Court to the District Court Committee on Reform of

Jury Selection Procedures, the Civil Justice Advisory Group, and the Magistrate Judge Selection
Committee. I am also an immediate past co-chair of the Federal Practice Section of the
Connecticut Bar Association. In addition, I am the Editor of the CTLA Forum, a legal journal
published by the Connecticut Trial Lawyers Association. I have written in the area of
discrimination law; most relevant to this case is a law review article analyzing the evolution of
employment discrimination doctrine, particularly in the Second Circuit: "Remodeling McDonnell
Douglas: *Fisher v. Vassar College* and the Structure of Employment Discrimination Law," 17
Quinnipiac L. Rev. 725 (1998) (with Jonathan Freiman). Additionally, cases of mine have been
the subject of four books or book chapters: Donald Freed, Agony in New Haven; Paul Bass and
Douglas Rae, Murder in the Model City; Robert H. Mnookin, In the Interest of Children; and
Richard Harris, Freedom Spent.

4.      Throughout my career, my practice has focused on the trial and appeal of serious
cases, almost always representing individuals pitted against corporate and governmental entities.
While spending most of my time as a trial lawyer, I have briefed and argued many appeals, in
both state and federal court.

5.      I was asked to participate in this case as counsel for the plaintiffs because I am
one of a relatively small group of Connecticut attorneys with extensive experienced representing
plaintiffs both in civil rights cases and in cases involving significant money damages issues or
claims. Some significant cases I have handled that involved substantial money damages claims,
civil rights claims, or both, are the following:

- *Association Against Discrimination v. City of Bridgeport,*  594 F.2d 306 (2d Cir.
  1979); 647 F.2d 256 (2d Cir. 1981), *cert. denied*, 455 U.S. 988 (1982); 710 F.2d

3

69 (2d Cir. 1983).  This was a class-action race discrimination case involving the Bridgeport Fire Department. It resulted in broad nonmonetary relief and a backpay award of $5.1 million, at that time apparently the highest ever against a municipality in a discrimination case.

• *United States v. Colon Osorio*, 801 F. Supp. 966 (D. Conn. 1992). As court-appointed counsel, I represented the defendant in a case holding that the jury selection process for the District of Connecticut unconstitutionally discriminated on the basis of race.

• *Cowan v. Breen,* 3:00cv00052 (RNC).  This was a civil rights wrongful death case involving the fatal shooting of a motorist by a municipal police officer. After a plaintiff's jury verdict on liability, the case was settled for $1.5 million, notwithstanding the absence of any claim for economic damages.

• *Jones v. Town of East Haven,* 3:99cv00632(AWT).  This is a wrongful death case where, as in the instant case, I became involved after substantial prior proceedings.  At a retrial in 2010 of the compensatory damages issue after a jury verdict awarding zero compensatory damages, the jury returned a plaintiff's verdict in the amount of $900,000, notwithstanding the absence of any claim for economic damages.  The case is on appeal.

• *Sable v. Southern New England Telephone Co.,* N-84-626 (RCZ).  This was a diversity personal injury action in which the jury returned what was at the time the highest plaintiffs' total damages verdict in Connecticut.

• *Orefice v. Secondino*, (X02) UWY CV04-4012057S.  This was a wrongful death

4

claim involving a motor vehicle crash. After a plaintiff's jury verdict on liability, the case was settled for what was at the time apparently the largest Connecticut settlement of a wrongful death claim.

- I have been counsel in many other cases involving claims of discrimination by government entities. These include employment discrimination class actions against the New Haven and Stamford Fire Departments, the Connecticut Department of Corrections, and the Connecticut State Police, among others. In each of these cases, plaintiffs and their class received substantial relief in the form of orders directing hiring, promotion, or structural reform as well as monetary relief. In individual cases against the Hamden Fire Department and the Stamford Police Department, among others, plaintiffs have received monetary or injunctive relief after trial before the court (as in the Hamden case) or a jury (as in the Stamford case).

6.     Some significant appeals I have handled that I believe are relevant to this case are the following:

- *Association Against Discrimination in Employment v. City of Bridgeport*, 594 F.2d 306 (2d Cir. 1979); 647 F.2d 256 (2d Cir. 1981), *cert. denied*, 455 U.S. 988 (1982); 710 F.2d 69(2d Cir. 1983). The Second Circuit in this case set standards for liability and relief in Title VII race discrimination cases.

- *Alston v. Manson*, 791 F.2d 255 (2d Cir. 1986), *cert. denied*, 479 U.S. 1084 (1987). The Second Circuit in this case held that Connecticut's state court jury selection system discriminated against African Americans on the basis of race.

5

- *Cowan v. Breen*, 352 F.3d 756 (2d Cir. 2003). This was an interlocutory appeal in the civil rights wrongful death case described above. Allowing the case to go to trial, the Second Circuit in this case set standards for assessing qualified immunity claims in excessive force cases.

7.     I have also been involved in several cases in the United States Supreme Court that involve civil rights issues. Some of these are the following:

- *Roe v. Norton*, 422 U.S. 391 (1975).  Appointed by then-District Judge Jon O. Newman to represent a class of children affected by a challenged state statute, I briefed and argued a welfare rights case in the district court and the United States Supreme Court.

- *Ansonia Board of Education v. Philbrook*, 479 U.S. 60 (1986). On behalf of a schoolteacher, I briefed and argued a religious discrimination case in the district court, the court of appeals, and the United States Supreme Court.

- *Rumsfeld v. Padilla,* 542 U.S. 426 (2004).  In this case involving the due process rights of alleged enemy combatants, I was the principal author of an *amicus curiae* brief on behalf of comparative law scholars and experts on the laws of Israel and the United Kingdom.

- *FAIR v. Rumsfeld*, 544 U.S. 1017 (2005). In this case involving military recruiting on campus, I prepared (with others) and filed an *amicus curiae* brief on behalf of Yale Law School professors.

8.     a)     Since January 1, 2011, my hourly rate has been $525. In 2009 it was $475, and in 2010 it was $500. In the exercise of billing judgment, I am claiming a rate of $500 per

hour, slightly below my current rate. These rates, like the rates of my coworkers identified below, applied or apply to all time spent on a case, whether in or out of court, including travel time.  Our hourly charges are for our time, however spent.

      b)      James Bhandary-Alexander's hourly rate as of January 1, 2010 was $225. Before then, it was $200. Mr. Bhandary-Alexander was a Thomas Emerson Fellow at our firm from September 2009 through March 2011, when he became a staff attorney at New Haven Legal Assistance.  He graduated from the University of Wisconsin-Madison, with distinction, in 1997 and Northeastern Law School in 2005 and practiced thereafter in Washington, D.C. and New Haven.

      c)      Three paralegal assistants worked on this case.  Their work involved tasks of significant complexity, such as reviewing documents; preparing trial and exhibit binders; and assisting in document analysis. They all have substantial experience: Shelley Adkins has worked with us for more than 30 years, Anna Maria Irizarry for more than 10 years, and Sarena Boulier for more than 7 years. The usual hourly rate for their time is $120. In addition to the paralegal work noted, they spent considerable time performing normal secretarial tasks such as typing, copying, filing, answering phones, and the like. We do not keep track of this time.

      9.      These hourly rates are well within the range of charges for attorneys and legal assistants of comparable skill and experience in the New Haven community. As the affidavit of Joseph Garrison submitted with the fee application shows, my hourly rate is slightly below the prevailing market rate of peer attorneys.

      10.      The hours spent on this case are shown on the attached tables. In summary, the total time spent is as follows:

David N. Rosen                     736.4

James Bhandary-Alexander   219.6

Paralegal Assistants             45.3

11.     In the exercise of billing judgment, I am not claiming any of the time spent by our

nonlawyer staff, and of the 216.6 hours spent by Mr. Bhandary-Alexander, I am claiming only

10.3. I am claiming only the hours Mr. Bhandary-Alexander spent exchanging emails with

defense counsel and preparing the examinations of the two trial witnesses he examined

personally, Ms. Runlett and Mr. Dunne.  For example, I am not claiming any of the hours Mr.

Bhandary-Alexander spent in court, even though he was actively involved, very helpful, and as

noted examined two witnesses. (The hours claimed for Mr. Bhandary Alexander are highlighted

on his time sheets.) Therefore, of the total of 1,001.3 hours spent by our firm, I am claiming

compensation for 746.7 and not claiming compensation for 254.6 (albeit the unclaimed hours are

at the lowest rates). In addition, as a matter of billing custom, our office does not charge, and I

am not seeking reimbursement, for the following items, among others: online legal research

(Lexis-Nexis) charges; in-house copying; auto mileage; and long-distance telephone charges.

12.     As an aid to the Court, I have reviewed my hours and put them in rough categories

that I believe are helpful in understanding how I spent my time on this case. The categories are

color-coded on my time sheets, which are attached.  (To be clear, this categorization was done

after the fact; my contemporaneous records describe my activities but do not categorize them.)

The categories overlap, but I have assigned each time entry to a single category. I emphasize that

this is a rough allocation, and many of the entries, could reasonably be put in a different category.

Nevertheless, I found it helpful and believe that the Court may as well. The 736.4 hours I spent

can be categorized as follows:

a.      Time spent on trial days or at other court hearings or conferences and the day

before a trial day.  Other than a handful of entries for a conferences with the Court, including a

settlement conference, these are days that I was in court or preparing before, during, and after

court for trial. Approximately 317.1 hours. Highlighted in yellow on the time sheets.

b.      Time spent reading transcript. Approximately 48.6 hours. Highlighted in green on

the time sheets.

c.      Time spent preparing examinations of identified witnesses. Approximately 38.3

hours.  Highlighted in orange on the time sheets.

d.      Damages analysis and preparation. Approximately 54.1 hours. Highlighted in

blue on the time sheets.

e.      Time spent researching and writing briefs and proposed findings and conclusions.

Approximately 128.1 hours. Highlighted in pink on the time sheets.

f.      Time spent on this fee application. Approximately 19.4 hours. Highlighted in

purple on the time sheets.

g.      Everything else, including such things as strategy meetings; analysis of

documentary evidence; selection and review of plaintiffs' exhibits; review and analysis of

defense exhibits and formulation of objections and responses to them; contacts with opposing

counsel; legal research and analysis in connection with trial presentation rather than for a brief;

contacts with the Court, including phone conferences and email;  communications, preparation,

and analysis regarding settlement; etc.  Also included here are some entries that could be partially

but not exclusively allocated to one of the other categories.  Approximately 130.8 hours. Not

9

highlighted on the time sheets.

13.    Of the time that I spent, 28.5 hours are attributable to travel to and from court. This time is included in (a) above. All the travel was with my co-counsel, and essentially all the travel time was spent planning and preparing for this case.

14.    Features of this case that are particularly notable in my view include the following:

a.    The trial was very long. My own approach to trials is to keep things short. This is by far the longest trial I have ever participated in, save one (a two-defendant, high-profile capital murder trial) – and it was a court trial! It was long because it was complicated, not because we (or the defense) were wasting time.

b.    We were completely successful. We received virtually every dollar we were seeking ($750,000 compared to a total of $759,000 claimed), and to the best of my recollection we won every motion.

c.    Our success was hardly because the case was easy. Far from it: both liability and damages were extraordinarily challenging to prove.

d.    We spent a remarkably small amount of time going down blind alleys. Every substantial case requires good attorneys to explore theories that might not hold up and to pursue factual leads that might go nowhere. Here, we got our legal theories (mostly developed before I arrived) and trial strategies right the first time.

e.    I was part of a superb team. As their academic records and history of achievements on behalf of their clients might have led one to expect, Attorneys Eppler-Epstein and White had put together a solid case by dint of tireless and creative investigation as well as

10

thorough and imaginative legal work. Attorney Bhandary-Alexander and I brought a lot to the table as well, and our team worked very effectively after we joined it, as it had from the beginning.

f.      The outcome of the case is exceptionally beneficial for the public interests that the fee-shifting statutes are intended to serve. The funds ultimately received by the plaintiffs will be available not simply to compensate for losses but also, by doing so, to provide additional funds for housing for the disabled.

15. My firm incurred $10,168.71 in costs, as follows. Receipts are available for inspection.

| State marshal service fee | 300.00 |
|---|---|
| Overnight mail | 177.93 |
| Copy charges | 985.08 |
| Transcript fees | 8,705.70 |
| Total | 10,168.71 |

16. The total amount of fees and costs claimed by my office is therefore as follows:

David N. Rosen                    736.4 hours at $500 per hour   $368,200.00

James Bhandary-Alexander    10.3 hours at $225 per hour        2,317.50

Costs for David Rosen & Associates P.C.                              10,168.71

Total for David Rosen & Associates, P.C.                          $380,686.21

11

Dated at New Haven this 11th day of August 2011.


                                         /s/ David N. Rosen
                                         David N. Rosen


Subscribed and sworn to before me, this _____ day of _____, 2011.


                                         _____
                                         Notary Public