UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| VALLEY HOUSING LIMITED | : | |
| PARTNERSHIP AND HOUSING | : | |
| OPERATIONS MANAGEMENT | : | |
| ENTERPRISE, INC. | : | |
|     Plaintiffs | : | CIV. NO. 3:06CV1319 (TLM) |
| | : | |
| V. | : | |
| | : | |
| CITY OF DERBY AND | : | |
| DAVID KOPJANSKI | : | |
|     Defendants | : | |

RULING ON PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES

[doc. ## 302, 342, 359]

Plaintiffs seek a total of $961,161.17 in attorneys' fees and costs as a prevailing party under the Fair Housing Act as amended in 1988, 42 U.S.C. §§ 3604(f)(1)- (f)(2); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 5 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Connecticut Fair Housing Act, Conn. Gen. Stat. § 46a-64c(6).[1] Pursuant to Judge Melancon's August 1, 2011 Order, plaintiffs are entitled to an award of reasonable attorneys' fees and costs under the FHA, 42 U.S.C. 3613(c)(2); the ADA, 42 U.S.C. § 12133 and 29 U.S.C. § 794a; the Rehabilitation Act, 29 U.S.C § 794a, and Conn. Gen. Stats. Section 46a-98a, allowing the remedies as authorized by Section 46a-86(c). [doc. # 298]. Plaintiffs request attorneys'

---

[1]  This total includes the fees sought in the initial application [doc. # 302] as well as those sought in the two supplemental applications [doc. ## 342, 359].

fees in the amount of $944,012.50 and costs in the amount of $17,148.67, for a total of $961,161.17.  Defendants do not dispute that plaintiffs are prevailing parties. Rather, they strenuously dispute the reasonableness of the fees claimed.

For the reasons set forth below, plaintiffs' application for attorneys' fees and costs is **GRANTED** in the amount of $918,620.17.

I. <u>BACKGROUND</u>

The Court's order and judgment in favor of plaintiffs was the culmination of a prolonged litigation which began in 2006, lasting almost 5 years. At the pre-trial stage, the parties conducted extensive discovery, with the filing of numerous discovery motions, followed by the filing of a dispositive motion by defendants in February 2008. A year later, defendants' motion for summary judgment was denied and a number of attempts at settlement ensued. Trial memoranda were filed in November 2009, in which plaintiffs estimated a trial time of 3-4 days and defendants estimated 4-5 days. Despite the estimates, the case was tried over 24 days, scattered from July 2010 through May 2011, with nineteen live witnesses and one witness by deposition. On July 29, 2011, Judge Melancon issued his findings of fact and conclusions of law and entered judgment in favor of the plaintiffs. [doc. #294]. Plaintiffs overwhelmingly prevailed in this case, having been awarded $750,048.43 in damages out of $759,020.78 sought.

II. <u>LEGAL STANDARD</u>

"The district court retains discretion to determine . . . what constitutes a reasonable fee." <u>Millea v. Metro-North R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (quoting <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 758 (2d Cir. 1998)).  Both our circuit court "and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" <u>Id.</u> (citing <u>Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany</u>, 522 F.3d 182, 183 (2d Cir. 2008); <u>see also</u> <u>Perdue v. Kenny A. ex rel. Winn</u>, ––– U.S. –––, 130 S.Ct. 1662, 1673 (2010)). The lodestar method of calculating fees, while not conclusive, is presumptively reasonable absent extraordinary circumstances.  <u>Id.</u>; <u>Perdue</u>, 130 S.Ct. at 1674.  "[C]ompliance with the Supreme Court's directive that fee award calculations be objective and reviewable,' implies the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure." <u>Id.</u> at 166-67 (citing <u>Perdue</u>, 130 S.Ct. at 1674).  In <u>Perdue</u>, the Court rejected the use of the twelve <u>Johnson</u>[2] factors as a method for calculating attorneys'

---

[2]  The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the

fees, stating that the method "gave very little actual guidance to the district courts". 130 S.Ct. at 1672 (citations omitted).

III. <u>REQUESTED FEES AND COSTS</u>

     Plaintiffs have requested fees and costs as summarized in Table 1, Fees and Costs Requested.

**Table 1, Fees and Costs Requested**

| FEES | | | |
|---|---|---|---|
| ATTORNEY | HOURS (<u>See</u> Table 2 for Breakdown) | HOURLY RATE | TOTAL |
| David N. Rosen | 799.4 | $500 | $ 399,700.00 |
| James Bhandary-Alexander | 10.3 | $225 | $ 2,317.50 |
| Shelley A. White | 645.9 | $400 | $ 258,360.00 |
| Shelley A. White (Travel) | 25 | $200 | $ 5,000.00 |
| Amy Eppler-Epstein | 766.7 | $350 | $ 268,345.00 |
| Amy Eppler-Epstein (Travel) | 58.8 | $175 | $ 10,290.00 |
| | | | |
| | **TOTAL FEES** | | $ 944,012.50 |
| | | | |
| **COSTS** | | | |
| David Rosen & Associates P.C. | $10,168.71 | | |
| New Haven Legal Assistance Ass | $6,979.96 | | |
| | | | |
| | **TOTAL COSTS** | | $17,148.67 |
| **Requested Attorney's Fees and Costs Total:** | | | $ 961,161.17 |

**Table 2, Breakdown of Hours Sought**

| | Hours Sought First Application | Hours Sought Supplemental Application | Hours Sought Second Supplemental | Total Hours |
|---|---|---|---|---|
| David Rosen | 736.4 | 45 | 18 | 799.4 |
| Shelley White | 623.3 | 19.1 | 3.5 | 645.9 |
| Shelly White (Travel) | 25 | 0 | 0 | 25 |
| Amy Eppler-Epstein | 764.4 | 0 | 2.3 | 766.7 |
| Amy Eppler-Epstein (Travel) | 57.8 | 0 | 1 | 58.8 |

---

nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 430, n. 3 (1983).

IV. <u>DISCUSSION</u>

"[T]he process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." <u>Adorno v. Port Authority of New York and New Jersey</u>, 685 F. Supp. 2d 507, 51 (S.D.N.Y. 2010).

    1.   <u>Reasonable Hourly Rate</u>

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." <u>Perdue</u>, 130 S.Ct. at 1672.  Reasonable hourly rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984). There is a rebuttable presumption that the reasonable hourly rate is one based on prevailing fees in the district where the case was litigated. <u>See</u> <u>Arbor Hill</u>, 522 F.3d at 191-193. A reasonable hourly rate is "the rate a paying client would be willing to pay." <u>Id.</u> at 190. "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 764 (2d Cir. 1998).

In support of their request for attorneys' fees, plaintiffs

submitted the declarations of Attorneys David Rosen, Joseph Garrison, Amy Eppler-Epstein, Shelley White, and Margaret Mason, along with the attorneys' contemporaneous billing records. [doc. ##303-308].

**a) David Rosen & Associates**

Plaintiffs seek an award of attorneys' fees for David Rosen and James Bhandary- Alexander. [doc. #302].

Defendants' primary argument against any award of fees to Rosen & Associates is that plaintiffs did not need additional lawyers, and that Rosen & Associates brought no value to the trial since Mr. Rosen had no particular expertise in Fair Housing law. Defendants argued in their original and supplemental opposition to the fee application that Mr. Rosen was added to the trial team, in essence, to run up legal fees. The Court notes that there is no supporting evidence for this latter assertion, and that Mr. Rosen's motivation for agreeing to participate in the case was not the subject of any inquiry at his deposition. Neither the record of this case nor the reputation earned by Mr. Rosen in more than 40 years at the bar of this Court supplies any reason to question Mr. Rosen's statement that he was asked by Attys. Eppler-Epstein and White to participate in this case because he is "one of a relatively small group of Connecticut attorneys with extensive experienced [sic] representing plaintiffs both in civil rights cases and in cases involving significant money damages or claims."

[Doc. #303, ¶5.].

The argument that Mr. Rosen's services were entirely unnecessary completely disregards the assessment of his clients and their admittedly experienced counsel at NHLAA that additional resources were necessary to try the case. This Court is not inclined to second guess such an assessment; instead, the focus should be on whether the additional lawyers led to duplicate billing, or duplication of effort.  An extensive review of the billing records and fee applications compels the conclusion that it did not.  Instead, taken together, the trial record and the billing records demonstrate that all counsel worked well and efficiently together, dividing responsibilities and reducing the fees claimed to account for the involvement of more than one lawyer.

The undersigned has reviewed trial transcripts, including the testimony of three major witnesses for whom Mr. Rosen assumed responsibility, based on his time records, Sam Rizzitelli, and David Kopjanski, who were adverse witnesses, and Brett Hill, a significant witness for the plaintiffs.   The trial judge noted in his ruling that he found Rizzitelli's testimony "riddled with inconsistencies, self-serving and not to be credible." [doc. #204, Ruling at 4]. Likewise, he determined that Kopjanski's testimony was "self-serving, inconsistent and not to be credible." Id. Judge Melancon observed that Hill's testimony was "credible and

forthright, even when it was not in plaintiffs' favor" and that "Hill had an impressive mastery of the details of the plaintiffs' operations, the CHFA application, and plaintiffs' damages." [Id. at 5].

These credibility findings, and the factual findings concerning damages which were associated with them, were critical to the outcome of the case and they are directly attributable to Mr. Rosen's experience, skill and preparation. It is axiomatic that at a trial, a good cross-examination usually brings plaudits to the examining lawyer and an excellent direct examination causes observers to comment on the excellence of the witness. Having observed Mr. Rosen at trial on several occasions, as both a lawyer and a judge, I know that his self-effacing and non-histrionic manner can lull opponents (and their witnesses) into underestimating the damage he is doing to their cases. No one in the District of Connecticut bar has a better reputation than Mr. Rosen for making complicated facts or issues, such as economic loss[3], intelligible to a finder of fact, whether jury or a judge. The high regard which his peers at the bar have for him is reflected in the affidavits submitted in support of his fee petition, and in the number of high profile cases in which he has

---

[3] I recall being advised more than 30 years ago by a distinguished judge of this Court to watch Mr. Rosen's direct examination of a testifying economist, and his cross-examination of the opposing economist, as a model for how such experts should be handled before a jury.

been retained to participate with other lawyers.  It is
incontrovertible that Mr. Rosen's participation was valuable in
achieving an outcome favorable to his clients.

Having decided that Rosen and his associate are entitled to
attorneys' fees, the Court turns to the reasonable hourly rate for
Rosen.[4]

Reasonable hourly rates "are in line with those prevailing in
the community for similar services by lawyers of reasonably
comparable skill, experience and reputation."  Blum v. Stenson,
465 U.S. 886, 895 (1984). C.f.  See Serricchio v. Wachovia
Securities, LLC, 706 F. Supp. 2d 237 (D. Conn. 2010) (finding that
a rate of $465 per hour is reasonable for attorney David Golub who
at the time had over 37 years of experience and successfully tried
a novel and complex USERRA case) (JBA); Vereen v. Siegler, Civ.
No. 3:07CV1898 (HBF), 2011 WL 2457534, at *2-3 (D. Conn. June 16,
2011) (awarding $400 per hour to attorney John Williams who has
over 43 years of experience as a plaintiff's civil rights lawyer);
Muhammed v. Martoccio, 06-cv-1137 (WWE), 2010 WL 3718560 (D. Conn.
Sept. 13, 2010) (awarding $500 per hour for plaintiff's trial
attorney John Williams with substantial experience in litigating
criminal and civil cases, where plaintiff's fee application was
unopposed); Bridgeport and Port Jefferson Steamboat Co. v.

---

[4]  Defendants state that they do not contest James Bhandary-Alexander's hourly
rate of $ 250.00 [doc. # 339, at 25]; however, Bhandary-Alexander only requests

Bridgeport Port Authority, No. 3:03CV599 (CFD), 2011 WL 721582, at *6 (awarding $425 per hour to attorneys with thirty to forty-three years of experience); Pappas v. Watson Wyatt & Co., 2008 WL 45385, at *5 (awarding hourly rate of $400 to Stamford employment discrimination attorney with 18 years of experience in 2008).

In this case, Rosen seeks a rate of $500 per hour.  Rosen received his B.A. *magna cum laude* from Harvard College in 1965 and graduated from Yale Law School in 1969, where he was a member of the Board of Editors of the Yale Law Journal. [doc. #303, ¶2]. Upon graduation, Rosen worked at the New Haven Legal Assistance Association for a year and then began his private practice, focusing on "the trial and appeal of serious cases, almost always representing individuals pitted against corporate and governmental entities". [doc. #303, ¶4]. Since January 1, 2011, Rosen's hourly billable rate has been $525. Id., ¶8.a. In 2010, Rosen's billable rate was $500 per hour and in 2009, $475 an hour.

Additionally, in support of the application, plaintiffs submit the affidavit of Joseph Garrison, a respected Connecticut attorney, whose practice is concentrated in the area of employment law, mainly representing employees. Garrison avers that his practice is similar to that of Rosen's and lauds Rosen's trial skills, stating that, "it is the rare lawyer who has been as successful as Mr. Rosen in trials, particularly given the

---

$225.00 an hour, a rate which the Court finds reasonable.

complexity and risk of the cases which he has taken to trial."
[doc. #304, Garrison Aff., ¶6]. Since January 2008, Garrison's
hourly rate has been $550. [doc. #304, Garrison Aff., ¶7].

Defendants oppose Rosen's requested rate as excessive,
initially arguing that it should be reduced to $350 and, more
recently, arguing that it should be fixed at $400.

Defendants cite a number of cases in support of their view
that the prevailing rate in this district appears to be in the
range of $300 to $350 per hour. However, three of those cases
awarded fees in 2008 and 2009; the case from 2010, Hubbard v.
Total Communications, Inc., Civ. 3:05cv1514 (VLB), 2010 WL 1981560
(D. Conn. May 18, 2010), awarded $350 per hour for services
rendered in 2008 and 2009, and in the 2011 case, Heyward v. PRA
Recovery, Inc., Civ. 10cv2030 (MRK), 2011 WL 3134985 (D. Conn. May
13, 2011), a Fair Debt Collection Practices Act case, the attorney
requested no more than $350.

Defendants, after deposing Rosen, submitted a supplemental
brief in opposition to the motion for attorneys' fees. They argue
that the $500 rate is not representative of Rosen's prevailing
rate as Rosen has not billed $500 an hour or more for any
comparable matters, charging that rate for non-civil rights
matters only. [doc. #355 at 5-6]. However, defendants' argument
misses the point of fee shifting statutes.  "The general purpose
of fee-shifting statutes such as § 1988(b) is to permit plaintiffs

11

with valid claims to attract effective legal representation," thus recognizing that civil rights plaintiffs are not generally in a position to hire experienced private counsel to vindicate their rights. <u>Green v. Torres</u>, 361 F.3d 96, 100 (2d Cir. 2004). The lodestar provides an award "that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." <u>Perdue v. Kenny A.</u>, 130 S.Ct. 1662, 1672 (emphasis in original) (citations omitted).

Based on the affidavits, other awards in this district, as well as the Court's own knowledge of fees generally charged by attorneys practicing in this district with similar levels of experience as Rosen, the Court finds that $485 per hour is a reasonable rate for Attorney Rosen in this case.[5]

### b) The New Haven Legal Assistance Association

Plaintiffs seek an award of attorneys' fees for NHLAA attorneys Shelley White and Amy Eppler-Epstein, at an hourly rate of $400 for White and $350 for Eppler-Epstein. Defendants oppose the rates as "entirely unreasonable". Defendants submit that $300 and $250 per hour are more reasonable rates for White and Eppler-

---

[5]  The undersigned has yet to award an hourly rate of $500 or more to a lawyer in this district.  Undoubtedly among the leading contenders for such an award are David Rosen, David Golub and Joseph Garrison, all of whom can command that fee and more from paying clients. One of the benefits clients obtain from hiring such highly skilled and experienced practitioners is representation that is appropriate and proportional to the complexity and importance of a specific case.

Epstein, respectively.

White earned her B.A. with Highest Honors in 1974 and received her law degree from Boston College in 1977, where she was a staff member of the Environmental Affairs law review. [doc. #306, ¶3]. Since 1987, White has been the Litigation Director at New Haven Legal Assistance Association. [Id., ¶2]. In that capacity, White supervises the work of the organization's attorneys in state and federal court. [Id.]. Since 1980, White has practiced law in Connecticut in various capacities, including legislative liaison for the Legal Services Training and Advocacy Project, attorney at the Office of Protection and Advocacy for Handicapped and Developmentally Disabled Persons, attorney at the Connecticut Civil Liberties Union, and representing individuals and groups in civil rights and civil liberties litigation. [Id., ¶¶6-8].  In addition, White has significant experience in litigating Fair Housing Act cases in federal court. In all, for over 30 years White has successfully advocated on behalf of the most vulnerable and underrepresented. Defendants seek a reduction in White's billable rate from the requested $400 to $300 per hour.

The Court finds that the requested $400 per hour is reasonable for Attorney White, given her 30 years of extensive legal experience in civil rights litigation. Bridgeport and Port Jefferson Steamboat Co., No. 3:03CV599 (CFD), 2011 WL 721582, at

13

*6 (awarding $425 per hour to attorneys with thirty to forty-three
years of experience); Pappas, 2008 WL 45385, at *5 (awarding
hourly rate of $400 to Stamford employment discrimination attorney
with 18 years of experience in 2008); Serricchio, 706 F. Supp. 2d
at 255-256 (awarding hourly rate of $410 to junior partner
Jonathan Levine with 19 years of expertise in employment matters
who regularly billed at $450 per hour).  An hourly rate of $400
for White's time reflects the rates prevailing in the Connecticut
legal market for similar services of lawyers of reasonably
comparable skill, experience, and reputation. Blum v. Stenson, 465
U.S. 886, 896 n. 11 (1984).

Eppler-Epstein received a B.A. with High Distinction from
Brown University in 1982 and her J.D. in 1986 from Yale Law
School, where she was a staff member of the Yale Law Journal.
[doc. #305 ¶3]. She has been a staff attorney with NHLAA since
1986, and, like White, has significant experience representing
parties and groups in civil rights matters in federal and state
courts.

Plaintiffs seek a rate of $350 per hour for Eppler-Epstein.
Defendants argue a rate of $350 per hour is excessive and that an
hourly rate of $250 should be awarded because Eppler-Epstein was
"supervised" by White and that her work on the case was in the

14

capacity of an "associate". With twenty-five years of experience[6] representing the underserved in this state, Eppler-Epstein's level of responsibility[7] in this case was considerably more than that of a law firm associate. Based on the Court's experience and knowledge of rates charged in this district, the requested $350 per hour is reasonable. See Flemming v. Goodwill Mortgage Svc. LLC, Civ. Action No. 3:07CV00803-AWT, doc. #174 at 3 (D. Conn. May 23, 2011) (awarding $325 per hour to CFHC attorney with 10 years of experience); Doe v. Bridgeport Police Dep't, 468 F. Supp. 2d 333 (D. Conn. 2006) (JCH) (awarding $ 375 per hour to civil rights attorney with 14 years of experience, who had been mentored and supervised by Eppler-Epstein when he was a law student); Pappas v. Watson Wyatt & Co., No. 3:04CV302 (EBB), 2008 WL 45385, at *5 (2008 case awarding $225 per hour to two attorneys who graduated from law school in 2000); Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority, No. 3:03CV599 CFD, 2011 WL 721582, at *6 (D. Conn. Feb. 22, 2011) (awarding $225 per hour to attorneys with four to six years of experience).

The fact that White and Eppler-Epstein work for a legal

---

[6] Defendants' proposed rate of $250 per hour for Eppler-Epstein is the same rate they do not contest for Bhandary-Alexander, who graduated from law school in 2005 and has nearly 20 fewer years of legal experience than Eppler- Epstein.

[7] Among other things, Eppler-Epstein did the opening statement, argued the motion for summary judgment, examined Dominick Thomas, Chris Peterson, Joseph Magani, and Linda Fusco, and took many of the key depositions, including Rizzitelli, Kopjanski and Garofalo. This is hardly the work typically undertaken by an associate.

services organization that does not actually bill clients at these rates does not diminish their experience, impressive legal careers and exemplary work in this particular matter. See Arbor Hill, 522 F.3d at 182, n.2.  ("The reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization, nor is the award necessarily limited because the attorney has agreed to undertake the case for a reduced fee compared to the customary market rate . . .").  "[T]here is no reasonable basis on which to distinguish a client of a legal aid society, or a publicly funded legal services organization, from one who retains private counsel." 20 Am. Jur. 2d Costs § 68 (2012) (citing Fairbanks Correctional Center Inmates v. Williamson, 600 P.2d 743 (Alaska 1979); Maplewood Management Inc. v. Best, 143 A.D.2d 978 (2d Dep't 1988)).

Finally, Eppler-Epstein and White request a lower hourly rate for travel time. Eppler-Epstein requests $175 and White requests $200 per hour. The Court finds that the hourly rates requested for travel are reasonable.

### 2.   Reasonable Number of Hours

The Court must next determine the number of hours for which fees will be awarded. In that regard, the Court has carefully scrutinized the time records submitted to ensure that the time was "usefully and reasonably expended," see Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994), and to eliminate hours that

16

appear excessive, redundant, or otherwise unnecessary. See Kirsch
v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998).
"A fee application must be supported by contemporaneous time
records which describe with specificity the work done."
Connecticut Hosp. Ass'n v. O'Neill, 891 F. Supp. 687, 690 (D.
Conn. 1994) (citing Mango v. Communications Workers of Am., AFL-
CIO, Local 1105, 765 F. Supp. 152, 155 (S.D.N.Y. 1991))."[T]he fee
applicant bears the burden of establishing entitlement to an award
and documenting the appropriate hours expended and hourly rates."
Hensley v. Eckerhart, 461 U.S. at 437, 103 S.Ct. at 1941.

The time records attached to plaintiffs' motion are, for the
most part, sufficiently specific with respect to the nature of the
work performed.

### a) David Rosen & Associates

Plaintiffs are seeking 799.4 hours of Rosen's time and 10.3
hours for Bhandary-Alexander's time. With regard to Bhandary-
Alexander, 254.6 hours have been written-off, seeking only 10.3
hours which were mostly spent by Bhandary-Alexander preparing the
examinations of the two trial witnesses for which he was
responsible. The Court has reviewed the time records and finds
that the 10.3 hours sought are reasonable for the work performed.

With regard to the 799.4 hours sought for Rosen's time, to
aid the Court, plaintiffs have divided up the time into
categories. [doc. #303]. The bulk of time, approximately 317.1

hours, was spent either preparing for trial, at trial, or after
trial; 48.6 hours reading transcripts; 38.3 hours preparing
examinations of identified witnesses; 54.1 hours on damages
analysis; 128.1 hours reading and writing briefs and proposed
findings of fact and conclusions of law; 82.4 hours preparing the
original and supplemental fee applications; and 130.8 hours for
everything else, such as phone conferences, e-mails, travel time,
exhibit preparation. The defendants have objected to numerous
entries which they characterize as vague, unreasonable, excessive,
or duplicative.

**b) New Haven Legal Assistance Association**

NHLAA personnel expended over 2000 hours on the
representation of plaintiffs. White seeks to be compensated for
645.9 hours and 25 hours for travel time at a lesser rate and
Eppler-Epstein seeks to be compensated for 766.7 hours and 58.8
hours of travel time at a lesser rate.  NHLAA is not billing for
179 hours of Eppler-Epstein's time and 366.3 hours of White's
time, representing a significant reduction in the hours sought.[8]
Moreover, NHLAA is not seeking fees for any of the 104 hours
worked by Bhandary-Alexander on this case when he returned to
employment at NHLAA.

---

[8] NHLAA is not seeking the total number of hours expended on the case, given
that from June 2006 through October 2009, the attorneys kept daily time records
manually and have not transferred these written time sheets into an electronic
system due to limited resources. [doc. #306 at 5, n.10].

**c) Vagueness**

Defendants object to certain entries on the basis of vagueness. "Fees should not be awarded for time entries when the corresponding description of work performed is 'vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended.'" Connecticut Hosp. Ass'n v. O'Neill, 891 F. Supp. 687, 690 (D. Conn. 1994) (citing Grogg v. General Motors Corp., 612 F. Supp. 1375, 1380 (S.D.N.Y. 1985)). Entries stating such vague references as "review of file", "review of correspondence", "research", "conference with client", and "preparation of brief" do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter. Mr. and Mrs. B. v. Weston Bd. of Ed., 34 F. Supp. 2d 777, 781 (D. Conn. 1999) (citing Connecticut Hospital Ass'n v. O'Neill, 891 F.Supp. 687, 691 (D. Conn. 1994); Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp. 510 (S.D.N.Y.1994); Orshan v. Macchiarola, 629 F. Supp. 1014 (E.D.N.Y.1986)).

While, a court may attempt to clarify vague entries by looking at the context of the adjacent entries, Conn. Hosp. Ass'n, 891 F. Supp. at 691, it is "neither practical nor desirable" to review each entry in a massive case. Copeland, 641 F.2d at 903 ("a district court [should not], in setting an attorney's fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation."). Thus, the Second Circuit has

19

approved a percentage reduction method "as a practical means of trimming fat from a fee application". Conn. Hosp. Ass'n, 891 F. Supp. at 691 (citations omitted) (reducing attorney fee petition by ten percent for vague entries); Rand-Whitney Containerboard v. Town of Montville, Civ. No. 3:96CV413, 2006 WL 2839236, at * 18 (D. Conn. Sept. 5, 2006) (reducing attorneys' fees by three percent for vague entries); Wilder v. Bernstein, 725 F. Supp. 1324, 1337 (S.D.N.Y. 1989), rev'd. on other grounds, 944 F.2d 1028 (2d Cir. 1991) (reducing the amount of fee request by twenty percent for vague entries); Gonzalez v. Town of Stratford, 830 F. Supp. 111, 114 (D. Conn. 1992) (reducing fee petition by ten percent to account for vague entries).

The Court has exhaustively reviewed the time records for Rosen, Eppler-Epstein and White and considered defendants' specific objections. With regard to Rosen, the Court finds that a small percentage of the hours billed should be deducted for vagueness and finds that a 3% reduction accounts for the entries the Court considers vague.

The entries that suffer from vagueness are those which state broadly, "read depositions", "prepare for trial" or "prepare for court", without more. Although the Court has no reason to doubt that this work was done, without more detail the Court cannot fairly evaluate the reasonableness of the services and hours expended. Based on its independent review of the time records, the

Court will reduce Rosen's hours by 3% for vagueness.[9]

The Court disagrees with defendants' characterization of many of the entries as vague. For instance, the 7/11/2010 entry, "research re: character evidence, Rule 404 and 608, as applied to testimony and Kopjanski & Spooner House, and draft memo re: same", is anything but vague, describing with particularity the research done and the contents of the memo drafted. Similarly, the entry on 1/15/2010, "revise letter to Judge re: recusal", and the entry on 12/12/2009, "review MSJ materials to develop trial strategy, e-mails to co-counsel re: trial strategy", sufficiently identify the nature of the work performed. There are many more, which the Court will not enumerate.

As to Eppler-Epstein's time entries, the Court finds that with the exception of three entries, they are exceptionally detailed. The Court deducts 20 hours for the entries on 12/28/2009, "trial prep depo review"; 12/30/2009, "review depos prep trial during vacation"; and 1/4/2010, "work on trial prep, rev depo, witness notes". Given the lack of details and the fact that twenty hours were allocated to these three entries, the Court is unable to ascertain whether the amount of time spent on these tasks was reasonable. Accordingly, 20 hours are deducted.

---

[9] The three percent deduction, which equals 22 hours, will be taken from the 736.4 hours billed by Rosen and requested in the initial application for attorneys' fees. The supplemental 63 hours sought by Rosen incurred prosecuting the motion for attorneys' fees are awarded in their entirety.

No hours are deducted from White's time on account of vagueness.

### d) Excessiveness/Duplication

In addition to the vagueness objections, defendants also assert that many of the entries are duplicative and excessive, arguing, for example, that "plaintiffs sent two attorneys to all depositions". [doc. #339, at 27].

Plaintiffs counter that, with an eye toward moderation, they have voluntarily written off 799.9 hours, obviating the need for any further deductions.

Defendants contend that certain fees billed by Attorneys Rosen, White and Eppler-Epstein are duplicative, arguing that it is unreasonable to have three lawyers work on a case where the issues were straightforward. As an initial matter, the Court notes that defendants cite no authority to support their argument that because defendants were represented by two attorneys, plaintiffs should not be permitted to recover fees for their representation by three attorneys. See Allende v. Unitech Design, Inc., No. 10 Civ. 4256 (AJP), 2011 WL 891445 (S.D.N.Y. Mar. 15, 2011); Bridgeport and Port Jefferson Steamboat Co, 2011 WL 721582, at *6 (awarding fees to twelve attorneys plus summer interns, paralegals and a librarian); Pappas, 2008 WL 45385, at *8 (awarding fees to five attorneys, law clerks and paralegals).

As for Mr. Rosen and Ms. Eppler-Epstein, the defendants'

primary attack is on the time spent, over 120 hours collectively, drafting the post-trial proposed findings of fact and conclusions of law.   Plaintiffs underscore that the "time spent on the proposed findings of fact was important to the successful outcome. [. . .] The Court relied on this document heavily in preparing its own extensive findings and conclusions."

The Court has reviewed the post-trial findings of facts and conclusions of law, which total 87 pages and thoroughly summarize the relevant evidence introduced at trial as it relates to the elements of proof needed to prevail. [doc. #289]. There are 257 proposed findings, each one with a citation to trial testimony, an exhibit or other piece of evidence in the record before the Court. Both parties had twenty-four days of trial testimony, including testimony from nineteen live witnesses, to read and dissect. The Court credits the representations made by plaintiffs' counsel that the case was prepared and tried to a reasonable standard and that the draft findings were important to the outcome of the case. Moreover, defendants do not provide any evidence of similar cases where attorneys spent less time doing a comparable task; or represent that they, for that matter, spent considerably less time in preparing their findings of fact and conclusions of law.[10]   In light of the way this case was tried over a prolonged span of

---

[10]   Defendants' post-trial proposed findings of fact and conclusions of law total 72 pages. [doc. #291].

time, and given the overwhelming victory secured by plaintiffs, the Court does not find the time spent on the proposed findings to be excessive.

Next, the Court has carefully reviewed the time records of all three attorneys and finds that there is minimal duplication, in part because plaintiffs, in exercising billing judgment, voluntarily reduced many of their hours. The Court disagrees that many of the entries defendants label as "duplicative" are in fact duplicative. Rather, most appear to be instances where the attorneys in this case were working collaboratively, as attorneys on a litigation team commonly cooperate and distribute work.

The Court has considered defendants' argument about sending multiple attorneys to a deposition where only one attorney took or defended the deposition. White and Eppler-Epstein are indeed competent attorneys and litigators, capable of taking depositions or arguing motions without oversight. However, the Court is well aware that, as a practical matter, attorneys working in a team need to be equally cognizant of the evidence and major developments in a case. So, for example, while it might not have been strictly necessary for both White and Eppler-Epstein to attend the depositions of Garofalo, Rizzitelli and Kopjanksi, it benefits the clients for White to be present at the deposition and witness first-hand the development of the evidence. Notwithstanding the value of having the "team" present for

depositions and other major activities, such as oral argument, a minor deduction is warranted to account for the duplication. The Court will deduct 5 percent of White's time, totaling 32.2 hours, to account for time billed that is duplicative.

Finally, defendants also argue, without citing to any authority, that the Court should cut 156 hours and 16 minutes of White's time for work she performed prior to filing her appearance on December 13, 2007. There is simply no support in the law for such a reduction. Lawyers routinely work on cases before filing an official appearance, and should not be penalized for filing a late notice of appearance. White's time entries from June 28, 2006 through December 13, 2007 are for work performed in this case and will not be reduced.

**e) Costs**

The Court finds that the costs requested are reasonable and awards plaintiffs costs in the amount of $17,148.67.


3.   Presumptively Reasonable Fee

For each attorney, the Court has multiplied the reasonable hourly rates by the reasonable amount of hours as determined by the Court. Table 3 summarizes the presumptively reasonable fee.

**Table 3, Presumptively Reasonable Fee**

| ATTORNEY | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| David N. Rosen | 777.4 | $485 | $ 377,039.00 |
| James Bhandary-Alexander | 10.3 | $225 | $ 2,317.50 |
| Shelley A. White | 613.7 | $400 | $ 245,480.00 |
| Shelley A. White (Travel) | 25 | $200 | $ 5,000.00 |
| Amy Eppler-Epstein | 746.7 | $350 | $ 261,345.00 |
| Amy Eppler-Epstein (Travel) | 58.8 | $175 | $ 10,290.00 |
| | **TOTAL FEES** | | $ 901,471.50 |

## 4.  Reasonable Adjusted Fee

Having determined the presumptively reasonable fee, the final step in the fee determination is to inquire whether an upward or downward adjustment is required. The Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). The Court finds no across-the-board reduction is warranted as plaintiffs prevailed on all claims, the defendants' motion for summary judgment was denied and plaintiffs were awarded substantially all of the damages sought. Therefore, the Court awards plaintiffs costs and fees as set forth in Table 4.

**Table 4, Total Costs and Fees Awarded**

| TOTAL COSTS | $ 17,148.67 |
|---|---|
| TOTAL FEES | $ 901,471.50 |
| **TOTAL COSTS AND FEES** | **$ 918,620.17** |

V. <u>CONCLUSION</u>

For the reasons stated, plaintiff's Motion for Attorneys'
Fees [doc. #302], supplemental motion for attorneys' fees [doc.
#342] and second supplemental motion for attorneys' fees [doc.
#359] are **GRANTED** in the amount of $918,620.17.

This is not a recommended ruling.  This is an attorneys' fees
order which is reviewable pursuant to the "clearly erroneous"
statutory standard of review. 28 U.S.C. § 636(b)(1)(A);
Fed.R.Civ.P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is
an order of the Court unless reversed or modified by the district
judge upon motion timely made.

ENTERED at Bridgeport, this 30th day of March 2012.

_____
/s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE